# United States District Court
# District of Massachusetts

OLIVER O'BRIEN,
        Plaintiff,

      v.                          CIVIL ACTION NO. 12-11522-NMG

LIFESTYLE TRANSPORTATION, INC.,
MICHAEL SOUTHWICK,
        Defendants.

## *REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT (#9)*

COLLINGS, U.S.M.J.

### I.  Introduction

Plaintiff Oliver O'Brien ("O'Brien") brings three claims in his complaint against his employer, Lifestyle Transportation, Inc. ("LTI"), and Michael Southwick, the president of LTI (collectively "the defendants").  LTI is a Massachusetts corporation that provides chauffeured transportation to

individuals and businesses.  O'Brien worked as a chauffeur for LTI and also in the company's dispatch office.

In Counts I and II of the complaint, O'Brien alleges the defendants violated the Fair Labor Standards Act ("the FLSA") and the Massachusetts Minimum Fair Wage Law ("the MFWL"), respectively, by failing to pay legally required overtime.  Count III alleges the defendants violated the Massachusetts Wage Act ("the MWA") by failing to pay O'Brien's wages in a timely manner.

In lieu of answering the complaint, on November 6, 2012, the defendants filed a motion to dismiss the complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P. (#9), together with a memorandum of law in support thereof (#10).  The plaintiff filed an opposition (#14) on November 30, 2013.   The defendants' first motion for leave to file a reply brief (#17) was denied for failure to comply with L.R. 7.1(A)(2).  On December 14, 2012, the defendants filed a second motion for leave to file a reply (#19) which the plaintiff opposed (#20) two weeks later.  On January 30, 2013, a hearing was held on the second motion for leave to file a reply and, after taking the matter under advisement, on March 21, 2013, the Court granted the motion with the caveat that no statute of limitations issue would be decided in the context of the motion to dismiss. (#27)  The defendants filed their reply (#28) on even date.

With the record now complete, the defendants' dispositive motion stands ready to be resolved.

## II. The Facts

O'Brien started his employment at LTI in October 2007. (#1 ¶ 14)  From the time he began working for LTI until May 2008, the plaintiff alleges that he was "improperly misclassified" as an independent contractor. (#1 ¶ 16) Starting in May 2008, he was classified as an employee with the same job responsibilities he had had from the beginning of his employment, to wit, working as a driver and in the dispatch office. (#1 ¶ 17)

In the dispatch office, O'Brien worked as a "wing person" and a "dispatcher." (#1 ¶ 28)  His duties as a dispatcher included communicating with LTI drivers and customers to facilitate customer delivery and pick-ups. (#1 ¶ 30)  As a wing person, O'Brien would assist the dispatcher on duty. (#1 ¶ 31) Whether working as a dispatcher or a wing person, O'Brien would punch the LTI time clock when he arrived, and once again when he left the office. (#1 ¶ 29)  The pay for the plaintiff's work in the dispatch office varied throughout his employment, ranging from $14 to $18 per hour based on his experience and whether he was working as a wing person or a dispatcher. (#1 ¶ 32)

LTI owns or leases about 70 passenger vehicles, including "sedans that weigh 10,000 pounds or less and are designed or used to transport fewer than eight passengers, including the driver" ("small vehicles"). (#1 ¶ 18)  As a driver for LTI, the vehicles driven by O'Brien included small vehicles during most or all workweeks. (#1 ¶ 21)  Just as was his practice when working in the dispatch office, the plaintiff punched the LTI time clock when he arrived at the garage, and again when he left. (#1 ¶ 22)  In between driving assignments, O'Brien would wait at a LTI-prescribed location to receive his next assignment and would take breaks less than ten minutes long after receiving approval from the LTI dispatch office. (#1 ¶¶ 26, 27)

LTI compensated the plaintiff for his work as a chauffeur "based on (a) an hourly rate of pay, plus (b) the compulsory customer service charge imposed by LTI on the customer" ("chauffeur compensation"). (#1 ¶ 33)   When calculating the chauffeur compensation, the defendants used two different hourly rates of pay. (#1 ¶ 34)  The first - which was the lower of the two rates - was the "Chauffeur Billable Hourly Rate" which ranged from $6.00 to $6.85 per billable hour. (#1 ¶ 35)  The second hourly rate, the so-called "Chauffeur Shift Hourly Rate," was $11.00 per hour. (#1 ¶ 36)   To determine chauffeur compensation, LTI would multiply the billable hours worked by the chauffeur

each shift by the Chauffeur Billable Hourly Rate, and then add the compulsory customer service charge. (#1 ¶ 37)  If the total was less than what O'Brien would have received using the Chauffeur Shift Hourly Rate, LTI would compensate the plaintiff at the Chauffeur Shift Hourly rate instead. (#1 ¶ 37)

When determining whether the plaintiff was entitled to overtime, LTI would use shift hours from O'Brien's work in the dispatch office and any billable hours from his time as a chauffeur; any shift hours the plaintiff worked as a driver were not included in the calculation. (#1 ¶ 39)  LTI paid the plaintiff overtime at the rate of one and one half times the Chauffeur Billable Hourly Rate if his hours as a dispatcher combined with his billable hours as a chauffeur were more than 40 hours during the workweek. (#1 ¶ 41)[1]  The chauffeur shift hours were greater than the number of chauffeur billable hours during most or all workweeks, and O'Brien never received any overtime for the additional shift hours in those weeks. (#1 ¶¶ 38, 40)  The plaintiff alleges that he was not paid at the legally required overtime rate because he was never paid overtime for the

---

[1]

       The defendants' opposition to the plaintiff's claim is that O'Brien was not entitled to any overtime pay consequent to the Motor Carrier Act exemption.  The defendants do not address the allegation that O'Brien was, in fact, paid overtime wages in some circumstances. *See* #1 ¶ 40.

weeks his chauffeur shift hours together with his hours in the dispatch office exceeded 40 hours. (#1 ¶¶ 41, 42)

### III.  Standard Of Review

A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim. In deciding such a motion, a court must "'accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor.'" *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011)). When considering a motion to dismiss, a court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice."  *Haley*, 657 F.3d at 46 (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)).

In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "obligation to provide the grounds of [the plaintiff's] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Id.* at 555 (quotation marks and alteration omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," and to cross the "line from conceivable to plausible." *Id.* at 555, 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). Simply, the court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. *Id.* at 679.

## IV. Discussion

### A.  Count I -Violation of Fair Labor Standards Act, 29 U.S.C. § 207

The plaintiff brings this overtime claim under the FLSA, 29 U.S.C. § 207. Section 207 of the FLSA provides, *inter alia*, that employees who work for more than 40 hours a week must be compensated at a rate not less than one and one half times their regular rate of pay. Title 29 U.S.C. § 207(a)(1).  There are, however, multiple exemptions to this overtime requirement. Title 29 U.S.C. § 213.   In determining whether an employee falls within the scope of an FLSA exemption, "'[t]he employer...bears the burden of establishing that its employees are exempt, and because of the remedial nature of the FLSA, exemptions are to be narrowly construed against the employers seeking to assert them.'" *De Jesus-Rentas v. Baxter Pharmacy Services Corp.*, 400 F.3d 72, 74 (1st Cir. 2005) (quoting *Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1070 (1st Cir. 1995) (internal quotation marks omitted)).

The Motor Carrier Act ("MCA") exemption does not require overtime pay for employees "with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." Title 29 U.S.C. § 213(b)(1).  Section

31502 allows the Secretary of Transportation to prescribe "qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier[,] and... of, a motor private carrier, when needed to promote safety of operation." Title 49 U.S.C. §§ 31502(b)(1) and (2).

The definition of motor carrier has evolved over the last decade, and as a result has created some confusion as to which employees are under the jurisdiction of the Secretary of Transportation and, therefore, exempt from the FLSA overtime provision.  Prior to 2005, a motor carrier was defined as "a person providing motor vehicle transportation for compensation." Title 49 U.S.C. § 13102 (2002) (amended 2005 and restored 2008).  In 2005, Congress passed the Safe, Accountable, Flexible, Efficient Transportation Equity Act - A Legacy for Users ("SAFETEA-LU"), which amended the definition of motor carrier by changing the term "motor vehicle" to "commercial motor vehicle," which in turn was defined, in part, as a vehicle weighing "at least 10,001 pounds," designed "to transport more than 8 passengers (including the driver) for compensation." Title 49 U.S.C. § 31132.  Essentially, SAFETEA-LU replaced "motor vehicle" with "commercial motor vehicle" in defining a motor carrier that was subject to regulation by the Secretary of Transportation.  As a consequence, only vehicles weighing more than 10,0001 pounds remained

under the authority of the Secretary of Transportation and smaller vehicles were no longer exempt under § 213 of the FLSA.

In 2008, Congress enacted the SAFETEA-LU Technical Corrections Act ("the TCA"), Pub. L. 110-244, 122 Stat. 1572, §§ 305-306, which amended the 2005 SAFETEA-LU. The TCA restored the pre-2005 meaning of "motor carrier." *See* Pub. L. 110-224, 122 Stat. 1572, § 305(c). Thus, "motor carrier" was no longer limited to commercial motor vehicles, and the Secretary of Transportation once again had authority over motor vehicles weighing both below and above 10,000 pounds. Even with that amendment, the TCA specifically stated that "[b]eginning on the date of the enactment of this Act, section 7 of the Fair Labor Standards Act of 1938 (29 U.S.C. 207) shall apply to a covered employee *notwithstanding* section 13(b)(1) of that act (29 U.S.C. 213(b)(1)." *See* Pub. L. 110-224, 122 Stat. 1572, § 306(a) (emphasis added).

> [A]lthough the Technical Corrections Act explicitly reinstated the jurisdiction of the Transportation Secretary over drivers of both smaller and larger trucks, the Act also explicitly amended the FLSA to provide that drivers who met the definition of a covered employee would be entitled to overtime compensation regardless of whether or not the Transportation [*sic*] had jurisdiction to regulate the hours and conditions of those drivers.

*Hernandez v. Alpine Logistics, LLC,* 2011 WL 3800031, at *4 (W.D.N.Y., Aug. 29, 2011) (citing *Miller v. Professional Transp.*, 2010 WL 3398935 (S.D. Ind., Aug. 25, 2010).

Thus, even if subject to the jurisdiction of the Secretary of Transportation, an employer may still be obligated to pay its employees overtime if the employees meet the definition of a covered employee. And only those employees who operate vehicles of 10,000 pounds or less are "covered employees."[2]

In sum, covered employees are entitled to overtime, regardless of the MCA exemption. The test is clear: if an employee works as a driver of motor vehicles that weigh less than 10,000 pounds in the provision of interstate transportation and is employed by a motor carrier, that employee is entitled to

---

[2]

The TCA defines a covered employee as one who is:

(1) ... employed by a motor carrier or motor private carrier (as such terms are defined by section 13102 of title 49, United States Code, as amended by Section 305;
2) whose work, in whole or part, is defined - -
    (A) as that of a driver, driver's helper, loader, or mechanic; and
    (B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce, except vehicles—
        (i) designed or used to transport more than 8 passengers (including the driver) for compensation;
        (ii) designed or used to transport more than 15 passengers (including the driver) and not used to transport passengers for compensation; or
        (iii) used in transporting material ....; and
(3) who performs duties on motor vehicles weighing 10,000 pounds or less.

Pub. L. 110-224, 122 Stat. 1572, § 306(c).

overtime pay under the FLSA.  The question with regard to O'Brien is how much time he must have spent working in motor vehicles weighing less than 10,000 pounds in order to qualify as a covered employee under the TCA.

According to the complaint, LTI had a mixed fleet where some cars weighed less than 10,000 pounds and others weighed more. (#1 ¶ 18)  Courts are divided on how to address mixed fleets, and the First Circuit has not weighed in on the issue subsequent to the effective date of the TCA. *See Brooks v. Halstead Communications, Ltd.*, 620 F. Supp.2d 193, 200-201 (D. Mass. 2009) (collecting cases).  The defendants argue that courts have favored applying the MCA exemption when employees are driving both light and heavy vehicles. *See, e.g., Jaramillo v. Garda, Inc.*, 2012 WL 4955932, at *5 (N.D. Ill, Oct. 17, 2012) (holding the MCA exemption should apply where the employee drove large vehicles and "could be expected to drive a large vehicle on any given day of his employment"); *Dalton v. Sabo, Inc.*, 2010 WL 1325613, at *4 (D. Or., Apr. 1, 2010)(finding that employees who drove both light and heavy vehicles were subject to the MCA exemption and "when mixed activities occur, the Motor Carrier Act favors coverage of the employee during the course of employment")(internal quotation marks and citation omitted)).

Both *Jaramillo* and *Dalton* were decided on motions for summary judgment. The Court in *Jaramillo* found there was enough evidence proffered to show employees had driven large vehicles more than 80% of the time, and that was a "reasonable amount of time" to fall within the exemption. *Jaramillo*, 2012 WL 4955932, at *5. In *Dalton*, the Court ruled in favor of the defendant employer because the plaintiffs, facing the defendants' "competent and unrebutted evidence that the vehicles driven by [the plaintiffs] either had a gross vehicle weight ratings in excess of 10,000 or actually weighed in excess of 10,000 pounds," simply stated their vehicles "felt" less than 10,000 pounds. *Dalton*, 2010 WL 1325613, at **3-4.

Here the Court is addressing a motion to dismiss, not a summary judgment motion. In his complaint, O'Brien alleges that "[d]uring most or all workweeks, the LTI vehicles driven by Plaintiff included Small Vehicles," defined to be "sedans that weigh 10,000 pounds or less and are designed or used to transport fewer that eight passengers including the driver." (#1 ¶¶ 18, 21)  For present purposes, these allegations, together with the remaining allegations of the complaint, are enough to state a plausible claim that the plaintiff qualifies as a covered employee under the TCA.

The defendants do cite a case wherein the plaintiffs, who were employed as chauffeurs, brought suit against their employer for overtime and the employer's motion to dismiss was granted. *Avery v. Chariots for Hire*, 748 F. Supp.2d 492 (D. Md. 2010). In that case, the plaintiffs did not allege that they "drove any vehicles that seated fewer than eight people" and twenty-seven out of twenty-eight vehicles in the employer's fleet sat more than eight people. *Id.* at 499. The TCA explicitly excepts vehicles designed to transport more than eight passengers, so drivers of such vehicles are not covered employees, and therefore not entitled to overtime. *See* Pub. L. 110-224, 122 Stat. 1572, § 306(c). The Court in *Avery* acknowledged there was a divide amongst courts with respect to the proper approach to the issue of a mixed fleet, and concluded:

> In some situations where use of non commercial motor vehicle wholly predominates and the use of commercial motor vehicles is of very limited duration or extent, it may be appropriate to differentiate between employees or to apply the motor carrier exemption only for those periods of time when employees were operating commercial vehicles. *See Brooks v. Halsted Commc'ns Ltd.*, 620 F. Supp.2d 193, 199–201 (D. Mass. 2009) (finding motor carrier exemption did not apply where there was no evidence that any of the employees seeking overtime had ever worked on or driven the company's limited number of commercial motor

> vehicles); *Tews v. Renzenberger, Inc.*, 592 F. Supp.2d
> 1331, 1346 (D. Kan. 2009) (rejecting argument that
> 'the mere presence of commercial motor vehicles in [a]
> fleet renders all employee-drivers exempt under the
> MCA exemption'). This case does not present a
> situation where the use of qualifying commercial motor
> vehicles was so limited, however, and thus it is not
> necessary to decide where the line must be drawn.

*Avery*, 748 F. Supp.2d at 500-501.

Although the case was decided on a motion to dismiss, the facts in *Avery*

distinguish it from the case at hand.  It has not been established in the instant

case that O'Brien is not a covered employee.

The bottom line here is that a number of courts have found mixed fleets

subject to the FLSA overtime provision. *See, e.g., Brooks,* 620 F. Supp.2d at 200

("[T]he question of whether a 'hybrid' motor carrier- *i.e.*, one with drivers

operating vehicles weighing both above and below 10,000 pounds-was obliged

to pay FLSA overtime to its drivers of lighter vehicles before June 6, 2008 has

produced conflicting answers. The weight of district court authority (no

appellate decision has as yet appeared), however, strongly favors Plaintiffs.");

*Tews v. Renzenberger, Inc.*, 592 F. Supp.2d 1331, 1346 (D. Kan. 2009) (rejecting

the argument that the mere presence of a few commercial motor vehicles in a

company's fleet renders all of its drivers exempt from overtime pay); *Mayan v.*

15

*Rydbom Express, Inc.*, 2009 WL 3152136, at *9 (E.D. Pa., Sept. 30, 2009) ("Section 306(c) clearly states that the employee's work need only 'in whole or in part' affect the safety of operation of vehicles weighing 10,000 pounds or less. An employee working on a 10,001 pound vehicle two days a week and a 5000 pound vehicle the remaining days of the week appears to satisfy this requirement. In short, the employees must simply perform *some* work on such vehicles." (emphasis in original; footnote omitted)); *Bedoya v. Aventura Limousine & Transportation Service, Inc.*, 2012 WL 3962935, at *4 (S.D. Fla., Sept. 11, 2012) ("[A]n employee's work need only *in part* involve the operation of non-commercial vehicles to be entitled to overtime." (emphasis in original)); *Vidinliev v. Carey International, Inc.*, 581 F. Supp.2d 1281 (N.D. Ga. 2008). These cases provide a legal basis for O'Brien's claim.        In the instant case, the facts must be developed through discovery before it can be determined whether O'Brien was a covered employee and, therefore, entitled to overtime pay.  Having alleged a plausible overtime claim under the FLSA, the motion to dismiss Count I should be denied.

### B.  Count II - Overtime Claim under Massachusetts Law

16

The defendants seek dismissal of Count II on the basis of an exemption under the Massachusetts Minimum Fair Wage Law.

Massachusetts General Laws chapter 151 § 1A is the overtime provision of the Massachusetts Minimum Fair Wage Law and Mass. Gen. L. c. 151 § 1B provides penalties for failure to pay the required overtime rate of compensation. Chapter 151 § 1A, "[t]he basic overtime provision of the Massachusetts statute[,] is essentially identical to the FLSA." *Valerio v. Putnam Associates Inc.*, 173 F.3d 35, 40 (1st Cir.1999); *see  Cash v. Cycle Craft Co., Inc.*, 508 F.3d 680, 686 (1st Cir. 2007); *Goodrow v. Lane Bryant, Inc.*, 432 Mass. 165, 171, 732 N.E.2d 289, 294 (Mass. 2000) (the Fair Labor Standards Act and the Massachusetts statute are "nearly identical").

Similar to the FLSA overtime provision, the Massachusetts overtime provision has exemptions.  For purposes of this case, the relevant exemption reads as follows:

> This section shall not be applicable to any employee who is employed: . . .as a driver or helper on a truck with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section two hundred and four of the motor carrier act of nineteen hundred and thirty-five, or as employee of an employer subject to the provisions of Part 1 of the

17

> Interstate Commerce Act or subject to title II of the
> Railway Labor Act.

Mass. Gen. L. c. 151 § 1A(8) (footnotes omitted).

By its terms, this statutory overtime exemption is limited to "*a driver or helper*

*on a truck*" (emphasis supplied); in the complaint, O'Brien is alleged to be

neither of these.

The plaintiff argues that the § 1A(8) exemption has no applicability on the

facts of this case.  O'Brien's position is supported by an opinion letter issued by

the Massachusetts Division of Occupational Safety, the division of the

Massachusetts Department of Labor tasked with implementing Mass. Gen. L. c.

151 §1A, which reads in part, as follows:

> You have asked the Division of Occupational Safety
> ("DOS") in a letter dated July 30, 2009, whether the
> statutory exemption of a truck driver from overtime
> pay requirements, pursuant to M.G.L. c. 151 § 1A,
> applies to certain categories of vehicles listed in your
> letter, and whether the word 'truck' is 'to be interpreted
> synonymously with "motor vehicle"' as used in federal
> law.
>
> The Division does not interpret the word 'truck' to be
> the same as the words 'motor vehicle' as used in federal
> law. The language of the motor carrier exemption in
> the Fair Labor Standards Act applies to 'any employee
> with respect to whom the Secretary of Transportation
> has power to establish qualifications and maximum

18

hours of service pursuant to the provisions of section 31502 of title 49.' 29 U.S.C. 213(b)(1). Although the exemption under Massachusetts law is similar, it applies to 'a driver or helper <u>on a truck</u> with respect to whom the Interstate Commerce Commission has power to establish qualifications...' G.L. c. 151 § 1A(8).  The inclusion of the word truck in the Massachusetts statute creates a narrower exemption than does the language of the Fair Labor Standards Act motor carrier exemption.

*****

It is clear from the language of these statutes that the generally understood meaning of the word truck is different than the generally understood meaning of the words automobile, van, bus or motor vehicle. Moreover, the FLSA, including the Motor Carrier exemption, was enacted in 1938, more than 20 years before G.L. c. 151 § 1A. Had the Massachusetts legislature intended the exemption in G.L. c. 151, §1A(8) to be interpreted in the same way as the Motor Carrier exemption, it would have used the same language as that exemption, as it did in other parts of the statute. Instead, the Massachusetts statute used similar language but modified it by including the word truck....

Accordingly, in order to give meaning to all of the words in the statute, DOS interprets the exemption in G.L. c. 151, § 1A(8) to be narrower than the Motor Carrier exemption and only to apply to those motor vehicles that can fairly be defined as a truck.

Opinion Letter MW-2009-02-09-09-09, Re: Request for Opinion Regarding the Applicability of M.G.L. c. 151, 1A(8) to Passenger Vehicles,

http://www.mass.gov/lwd/labor-standards/minimum-wage/opinion-letters/2009/mw-2009-02-09-09-09.html (accessed 04/11/13); #14-4.

The Massachusetts Supreme Judicial Court has concluded that when "the agency's interpretation is not contrary to the plain language of the statutes or their underlying purposes, it is entitled to deference." *Mullally v. Waste Management of Massachusetts, Inc.*, 452 Mass. 526, 533, 895 N.E.2d 1277, 1283 (Mass. 2008).

In addition, the cases upon which the defendants rely can be readily distinguished.  For example, while at least one court has written that "[t]he Supreme Judicial Court of Massachusetts has recognized that the Massachusetts overtime law, including the exemptions contained in Massachusetts General Laws ch. 151, § 1A, follows the FLSA," *Tidd v. Adecco USA, Inc.*, 2008 WL 4286512, at *1 n. 1 (D. Mass., Sept. 17, 2008) (citing *Swift v. Autozone, Inc.*, 441 Mass. 443, 806 N.E.2d 95, 98 (Mass. 2004)(further citations omitted)), O'Brien correctly notes that the plaintiffs in the *Tidd* case were delivery truck drivers for FedEx so the § 1A(8) exemption would have been applicable. (#14 at 14)  Moreover, the case referenced by the *Tidd* court, *Swift*, did not involve the § 1A(8) exemption.[3]  Further, the facts of the sole remaining case upon

---

[3]

       Similarly, the First Circuit decision in *Valerio* did not address any exemptions at all.

which the defendants rely, *Harrington v. Despatch Industries, L.P.*, 2005 WL 1527630, at *1 (D. Mass., June 29, 2005) reflect that the plaintiff Harrington likely would fall under the § 1A(8) exemption: "Despatch provides Harrington with a four and one-half ton Chevrolet van to travel to customer sites. The van is equipped with tools, test equipment, and spare parts. Despatch (or a vendor) regularly ships parts to Harrington at his home in Massachusetts for delivery to its customers."

In short, because the exemption found in Mass. Gen. L. c. 151§ 1A(8) does not apply on the facts alleged in the complaint, the defendants' motion to dismiss Count II should be denied.

C. Claim III - Timely Payment of Wages Claim Under Massachusetts Law

Under the Massachusetts Wage Act,

> [e]very person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week, or to within seven days of the termination of the pay period during which the wages were earned if such employee is employed seven days in a calendar week....

Mass. Gen. L. c. 149 § 148.

Further, Mass. Gen. L. c. 149 § 150 authorizes an aggrieved employee to bring suit for violation of § 148 for damages, including an award of treble damages, as well as any loss of wages and other benefits, attorneys' fees and costs. The Superior Court of Massachusetts has held that overtime wages can be awarded under § 148[4], and the Supreme Judicial Court of Massachusetts recently held that when the statute of limitations governing an overtime claim has run out, the employee may still assert a claim "for unpaid overtime work at the regular rate under the Wage Act." *Crocker v. Townsend Oil Co., Inc.,* 464 Mass. 1, 7, 979 N.E.2d 1077, 1082 (Mass. 2012). Thus, if O'Brien is found to be entitled to overtime under Mass. Gen. L. c. 151 § 1A, he can also proceed under Mass. Gen. L. c. 149 § 148 and hold the defendants accountable for not paying that overtime in a timely manner.

---

[4]      The Massachusetts Superior Court awarded overtime wages under Mass. Gen. L. c. 149 § 148 in *Parow v. Howard*, 17 Mass L. Rep. 149, 2003 WL 23163114, at **2-3 (Mass. Super., Nov. 12, 2003), where the Court found the defendants to have violated § 148 by failing to pay the plaintiffs their earned overtime wages within seven days of the termination of the pay period. *See also Souto v. Sovereign Realty Associates, Ltd.*, 23 Mass. L. Rptr. 386, 2007 WL 4708921, at *2 (Mass. Super., Dec. 14, 2007) ("Massachusetts courts have recognized that wages at the employee's regular rate for time worked in excess of his normal hours are 'wages' nonetheless for purposes of G.L. c. 149, § 148. *Parow v. Howard*, 2003 WL 23163114, *3 (Mass. Super.) (allowing recovery of overtime wages under G.L. c. 149, § 148); *Charles v. Roads Corp.*, 1999 WL 1203754, *3 (Mass. Super.) (finding salary owed to employee for hours worked is an hourly wage regardless of characterization as overtime or otherwise).").

Count III is dependent on O'Brien's overtime claim. So long as the overtime claim is viable, the motion to dismiss Count III should be denied.

## V. Conclusion

For the reasons stated, I RECOMMEND that Defendants' Motion To Dismiss Plaintiff's Complaint (#9) be DENIED.

## VI. Review by the District Judge

The parties are hereby advised that any party who objects to these recommendations must file a specific written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603

(1st  Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ *Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge

May 30, 3013.